Frederick M. ANDERSON, Plaintiff,

v.

Winton HASCALL, Superintendent of UNICOR Print Plant, F.C.I. Sandstone, William Munn, formerly B-Unit Case Manager, F.C.I. Sandstone, Defendants.

Allan Lockwood BROWN, Plaintiff,

v.

Marion LACY, Warden, Defendant.

Nos. CIV. 5–82–174, 5–82–313.

United States District Court,
D. Minnesota,
Fifth Division.

July 20, 1983.

Frederick M. Anderson, pro se.

Allan Lockwood Brown, pro se.

James M. Rosenbaum, U.S. Atty. and Ann D. Montgomery and Robert M. Small, Asst. U.S. Attys., Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

These matters are before the Court on the defendants' objections to two reports and recommendations of the United States Magistrate. The cases are factually quite similar and the legal issues presented in the two cases are identical.

## FACTS

In each of the cases the plaintiff is a federal prisoner who was involuntarily transferred from one prison job to another without a hearing. Each plaintiff alleges a deprivation of his fifth amendment right to due process of law.

In *Anderson v. Hascall, et al.,* Civil 5–82–174, the plaintiff Frederick M. Anderson was confined at the Federal Correctional Institution at Sandstone, Minnesota, from September 22, 1981, until April 15, 1982, when he was transferred to Allentown Federal Prison Camp in Montgomery, Pennsylvania. While at Sandstone, Anderson was employed in the print shop of the Federal Prison Industries, Inc. (hereinafter referred to as UNICOR) as a quality assurance inspector.

In early January of 1982, Anderson was summarily transferred out of UNICOR into the prison's food service department. Anderson was transferred because he was caught working on legal papers during his shift. He had previously been given two written warning notices that he could not do legal work while on the job. The decision to transfer Anderson was made by the prison's executive assistant after a request by Anderson's crew supervisor. Anderson did not receive a hearing before or after his transfer.

Anderson brought this action seeking $499.56, the claimed difference between the wages he received during the three months he worked as a food service employee and the wages he would have received had he not been transferred out of the higher-paying UNICOR job. The defendants in this case, Winton Hascall and William Munn, are prison officials.

Upon cross motions for summary judgment in the *Anderson* case, the Magistrate recommended denying the defendants' motion for summary judgment and granting the plaintiff's motion for partial summary judgment to the extent of holding that Anderson was deprived of property without

due process of law by the manner in which he was transferred.[1] The Magistrate also recommended receiving additional evidence on the issue of damages.

The plaintiff in *Brown v. Lacy,* Civil 5–82–313, Allan Lockwood Brown, is a prisoner at F.C.I. Sandstone serving a seven-year sentence for armed bank robbery. The defendant is Marion Lacy, warden of F.C.I. Sandstone. Brown was employed in the UNICOR print shop at F.C.I. Sandstone beginning on October 13, 1981. On December 15, 1981, after three written warnings for sleeping on the job, working on legal papers on the job, and interfering with a staff member attempting to recover contraband, Brown was summarily transferred to a non-UNICOR job.

Brown appealed his transfer claiming that it was a disciplinary sanction which could not be imposed without following published procedures which call for notice and an opportunity to be heard. 28 C.F.R. §§ 541.11–.17. This appeal was turned down on the ground that Brown's transfer was not a disciplinary sanction, but rather resulted from his "disruptive and non-productive" work behavior, and that the published procedures therefore did not apply. Affidavit of Ronald G. Houser, Mar. 17, 1983, exhibit entitled "Response to Administrative Remedy Appeal."

The *Brown* case is a habeas corpus action in which Brown alleges that his transfer without a hearing deprived him of liberty without due process of law. Specifically, Brown is seeking restoration of "extra good time" credits which he claims he would have accrued had he not been transferred. Pursuant to 18 U.S.C. § 4162 and 28 C.F.R. § 523.14, inmates assigned to UNICOR jobs automatically accrue extra good time credits (deductions from sentence) at the rate of three days per month for the first year in UNICOR and five days per month thereafter. Inmates assigned to non-UNICOR jobs do not automatically accrue extra good time credits, but may earn such credits, upon recommendation by the prison staff, by performing "exceptionally meritorious service." 18 U.S.C. § 4162; 28 C.F.R. § 523.11. Brown claims that he was prevented from accruing 24 days of extra good time credits as a result of his transfer out of UNICOR.[2]

In an opinion which relies on the same reasoning and legal analysis as the *Anderson* opinion, the Magistrate recommended ordering that Brown be reassigned to a UNICOR job compatible with his abilities and skills and that he be credited with extra good time from the date of his transfer until the date he is reassigned.

The government has filed objections to the Magistrate's report and recommendation in both cases. The Court has considered these objections and plaintiff Anderson's response[3] and has concluded that the Magistrate's reports and recommendations must be rejected.

DISCUSSION

██ In order for a violation of the fifth amendment to occur, a life, liberty, or property interest must exist. It is beyond dispute that the Constitution itself does not create a protectable interest in the retention of a prison job. *E.g., Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980). Rather, job transfers are a matter of prison administration. *Id.*

However, protectable interests can be created by statute or rule as well as by the Constitution. The Magistrate concluded

1. The Magistrate erroneously concluded that this action is maintainable under 42 U.S.C. § 1983. Section 1983 applies only in cases of deprivations of constitutional rights under color of *state* law. Anderson is a *federal* prisoner. However, this case is maintainable directly under the fifth amendment. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Jurisdiction exists pursuant to 28 U.S.C. § 1331.

2. The government contends that a maximum of four days credit is at issue since Brown was recommended for, and received, extra good time credits after his transfer.

3. Plaintiff Brown filed no response despite being given an extension of time in which to do so.

that the Bureau of Prisons had created a protectable interest in the retention of a prison job by virtue of its promulgation of 28 C.F.R. §§ 541.11 to 541.17, dealing with disciplinary sanctions.

Sections 541.11 to 541.17 do not deal specifically with prison job transfers. Rather section 541.11 lists, in a series of tables, various violations of prison regulations and the corresponding range of sanctions for each type of violation. One such violation is "[f]ailing to perform work as instructed by the supervisor." The Magistrate concluded that this offense is most applicable in these cases.

The range of sanctions listed for failing to perform work as instructed by the supervisor includes the sanction "loss of job." "Loss of job" is defined as encompassing both removal from a job and reassignment to another job. 28 C.F.R. § 541.11, Table I note 2.J.

According to the regulations, no disciplinary sanction may be imposed on a prisoner unless certain procedures are followed. First, the observing staff member must prepare a written incident report detailing the inmate's offense. 28 C.F.R. § 541.12(a). This is necessary only if the matter cannot be resolved informally with the consent of both parties. *Id.* Next, the incident report is sent to the prisoner's correctional supervisor who may resolve the dispute informally or drop the charges. *Id.* If the dispute is not resolved at this stage, an investigator is appointed who reports to the prison's Unit Disciplinary Committee (UDC). 28 C.F.R. § 541.12(b). The UDC holds a hearing and may impose minor sanctions in the event it finds that the prisoner committed a prohibited act. 28 C.F.R. § 541.13. Imposition of major sanctions can occur only after a hearing before the prison's Institution Disciplinary Committee (IDC). *Id.* Appeals go to the prison's warden, the Regional Director of the Bureau of Prisons, and the Bureau's

General Counsel, in that order. 28 C.F.R. § 541.17.

Concededly, none of these procedures was followed with respect to the plaintiff's transfers. The Magistrate concluded that the failure to follow these published procedures deprived the plaintiffs of a protectable interest in the retention of their respective prison jobs without due process of law.

The defendants' objections to the Magistrate's report and recommendations are twofold. First, the defendants contend that 28 C.F.R. §§ 541.11 to 541.17 do not create a protectable interest in the retention of a prison job. Second, the defendants maintain that sections 541.11 to 541.17 are irrelevant to these cases because neither of the plaintiffs was transferred for disciplinary reasons.

The Court need not decide whether sections 541.11 to 541.17 create a protectable interest in the retention of prison employment because the Court is convinced that those sections have no applicability to the cases at hand. The Court reaches this conclusion because there is no evidence in the record that either of the plaintiffs was transferred for disciplinary reasons. Rather, the record reveals that the plaintiffs were transferred because of their continued unsatisfactory work performance. Plaintiff Anderson received repeated written warnings that he was not permitted to work on legal papers while on the job. Plaintiff Brown received written warnings for sleeping on the job, working on legal papers while on the job, and interfering with a staff member while on the job. Copies of these warning notices are attached as exhibits to the March 17, 1983, Affidavit of Ronald G. Houser filed in these cases.[4] Significantly, neither of the plaintiffs has denied the facts set forth in these warning notices. In this context, the disciplinary procedures set out in 28 C.F.R. §§ 541.11 to 541.17 are inapplicable because the prison staff, in its discretion, decided merely to

---

**4.** Each of these warning notices contains the statement "[I]f you do not show an immediate improvement in your work, loss of industrial Good Days, Reduction in Grade, Disciplinary Action and Possible Loss of your Assignment in Industries may result." Clearly, both plaintiffs had ample notice that they could be transferred for unsatisfactory work performance.

transfer the plaintiffs to new jobs rather than to discipline them.

The nondisciplinary nature of the plaintiffs' transfers is determinative of the outcome of these cases. For as the Magistrate himself recognized, "[t]here is, in the regulations governing UNICOR, no explicit standard limiting exercise of the discretion of institutional staff to remove an inmate from his prison job" for nondisciplinary reasons. Reports and Recommendations, Jan. 28, 1983, at 11. Thus, a prisoner can have no expectation of continued employment in a particular prison job. *See Olim v. Wakinekona,* —— U.S. ——, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (prison regulations which placed no substantive limitation on official discretion created no liberty interest entitled to protection under the due process clause).

The Magistrate erred in assuming that any prison job transfer is necessarily a disciplinary sanction which calls into play the procedural requirements of sections 541.11 to 541.17. The affidavit of Ronald G. Houser, the Executive Assistant to the Warden at F.C.I. Sandstone and the person in charge of job assignments and job transfers, reveals that prisoners are routinely transferred to other jobs for nondisciplinary reasons:

> However, on some occasions, I receive a telephone call from a work supervisor who indicates that an inmate is not performing well or is disturbing the rest of the crew. At that time the supervisor will usually request that the inmate be given a job change. In most cases, this request would be honored, and the inmate would be removed from his present job and assigned to another detail. No incident report is written on the inmate because the crew supervisor does not feel that disciplinary action should be taken. It is nothing more than a change in assignment and is not meant to penalize the inmate in any way.
>
> *If an inmate for Federal Prison Industries does not follow the safety regulations or has had several warnings for violations in the Industries job assignments, the Industries' Business Manager contacts me requesting that he be given a job change. Once again, no incident report is written on the inmate because nothing more than a change from one job assignment to another is taking place and it is not felt that the inmate needs to have an incident report in his central file.*

Affidavit of Ronald G. Houser, Mar. 8, 1983, at 4–5 (emphasis added). The fact that "loss of job" is a permissible disciplinary sanction for some violations of prison rules does not mean that all job transfers are disciplinary in nature.

It must be emphasized that the job transfers involved in these cases were not punitive. Neither of the plaintiffs lost any accrued extra good time credits or any accrued wages. *Cf. Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (minimum due process procedures must be followed where state seeks to take away prisoner's accrued good time credits). Nothing was taken from them. They merely lost, temporarily, the ability to accrue extra good time credits automatically in the future and the ability to continue to earn the higher level of wages paid to UNICOR employees. These incidental consequences of the plaintiffs' transfers do not constitute punishment.

Practical considerations also dictate the conclusion that the procedures set forth in 28 C.F.R. §§ 541.11 to 541.17 need not be followed prior to every prison job transfer. From the standpoint of prison officials, requiring an investigation and a hearing prior to every nondisciplinary transfer would be unduly burdensome. At F.C.I. Sandstone, job assignments and job transfers occur at the rate of 15 to 20 per day. Transfers from UNICOR jobs to non-UNICOR jobs occur at the rate of three to four weekly. Affidavit of Ronald G. Houser, Mar. 8, 1983, at 5. Prison administration would quickly become bogged down if hearings were required in every case.

From the prisoner's standpoint, the filing of an incident report in every case in which a nondisciplinary job transfer occurs would not be beneficial. An incident report in a

prisoner's file can make the prisoner ineligible for a variety of privileges. Affidavit of Ronald G. Houser, Mar. 8, 1983, at 7.

 By necessity, prison officials must be afforded broad discretion in the day to day administration of a prison. *Hewitt v. Helms,* ―― U.S. ――, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Absent a deprivation of constitutional rights, courts should not interfere in the internal administration of prisons. *Holt v. Sarver,* 442 F.2d 304, 307 (8th Cir.1971). Since the plaintiffs possess no constitutionally protected interest in the retention of a particular prison job, *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980), no deprivation of constitutional rights exists in these cases. While the plaintiffs may or may not have a protectable interest pursuant to 28 C.F.R. §§ 541.11 to 541.17 in not being transferred for disciplinary reasons without a hearing (an issue the Court need not decide), those regulations have no applicability in the context of these nondisciplinary job transfers.

Accordingly, based upon the Court's independent de novo determination of the Magistrate's reports, findings, and recommendations, and the Court finding itself in disagreement with the reports and recommendations,

IT IS ORDERED that:

1. the Magistrate's reports and recommendations are rejected;

2. the plaintiff's motion for partial summary judgment in *Anderson v. Hascall, et al.,* Civil 5–82–174, is denied;

3. the defendants' motion for summary judgment in *Anderson v. Hascall, et al.,* Civil 5–82–174, is granted;

4. the plaintiff's petition for a writ of habeas corpus in *Brown v. Lacy,* Civil 5–82–313, is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.