**Walter CODD, Plaintiff–Appellant,**

v.

**Robert BROWN, Jr.; William Grant; and Lorna Elkins, Defendants– Appellees.**

**No. 91–1554.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 30, 1991.

Decided Nov. 22, 1991.

Daniel E. Manville (argued and briefed), Detroit, Mich., for plaintiff-appellant.

Deborah K. Isom, (argued and briefed), Asst. Atty. Gen., Office of the Atty. Gen., Corrections Div., Lansing, Mich., for defendants-appellees.

Before KENNEDY and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Plaintiff-appellant Walter Codd appeals the District Court's order granting the defendants summary judgment on plaintiff's action under 42 U.S.C. § 1983. The District Court concluded that, under the law of this Circuit, Codd, a state prisoner, was effectively suing the defendants in their official capacity, and therefore the suit was barred by the Eleventh Amendment. Upon a review of the record, we do not reach the District Court's Eleventh Amendment analysis, but affirm the dismissal for failure to establish a constitutional violation.

## I.

While serving a life sentence, Walter Codd was allowed to participate for four years in a "work-pass program." Under this program, certain prisoners were allowed employment outside the confines of the institution where they were serving their sentence. The program was authorized by section 791.265a of the Michigan Compiled Laws Annotated, which provides that:

> Under prescribed conditions, the director may extend the limits of confinement of a prisoner, when there is reasonable assurance, after consideration of all facts and circumstances, that the prisoner will not become a menace to society or to the public safety, by authorizing the prisoner to do any of the following:
>
> . . . .
>
> (c) Work at paid employment. . . .

Mich.Comp.Laws Ann. § 791.265a(1) (West Supp.1991).

On March 18, 1986, defendant Robert Brown, the Director of the Michigan Department of Corrections, issued a departmental memorandum stating that inmates serving life sentences ("lifers") should not be allowed to participate in the work-pass program. Brown gave as his reason for disallowing the participation of lifers in the program the belief that it was not the intention of either the legislature that passed the enabling legislation or of the Michigan Corrections Commission that such prisoners should participate. Defendant William Grant, the Warden of the Camp Program for the Michigan Department of Corrections, acted upon Brown's memorandum and issued internal memoranda directing the removal of all lifers from the program. Acting pursuant to Brown's directive, defendant Lorna Elkins, a now retired Michigan Department of Corrections employee, proceeded to remove Codd from the program. She did so by issuing him a notice to conduct an administrative hearing on April 8, 1986, and by conducting the hearing on April 9, 1986. Based upon the letters from defendants Grant and Brown, Elkins removed Codd from the work-pass program. This lawsuit followed.

The District Court granted defendants' summary judgment motion, based upon its reading of the Eleventh Amendment cases in our Circuit, principally *Cowan v. University of Louisville School of Medicine*, 900 F.2d 936 (6th Cir.1990) and *Rice v. Ohio Dep't of Transp.*, 887 F.2d 716 (6th Cir. 1989), *vacated on other grounds*, —— U.S. ——, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990). The court held that, inasmuch as the suit concerned legitimate functions carried out by the defendants within the scope of their duties, the suit was against them in their official capacity, and therefore barred by the Eleventh Amendment. Although we concur with the court below that the law of Eleventh Amendment immunity is somewhat unclear, we decline to reach that issue here. Plaintiff's complaint, fleshed out by the motion for summary judgment, fails to state a claim for relief under section 1983. We are free to affirm on such an alternate basis. *Herm v. Stafford*, 663 F.2d 669 (6th Cir.1981).

## II.

■ To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law violated a right, privilege or immunity secured by the Constitution or the laws. Here, plaintiff claims a violation of constitutional

rights. A failure to identify a right, privilege or immunity secured by the Constitution that was violated merits dismissal of the cause of action for failure to state a claim upon which relief can be granted. We turn therefore to an examination of whether plaintiff has identified any rights secured by the Constitution, the violation of which would give rise to a valid section 1983 claim.

■ Plaintiff has alleged very broad constitutional violations. In essence, he claims that he had a liberty interest in the work-pass program, and that his removal from it occurred without due process of law. We are required to approach due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the defendants; the second examines whether the procedures attendant upon the deprivation were constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). The *Thompson* Court noted that "the types of interests that constitute 'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than 'an abstract need or desire'. . . . Rather an individual claiming a protected interest must have a legitimate claim of entitlement to it." *Id.* Protected liberty interests spring from two possible sources, the due process clause itself and the laws of the state involved. *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983)).

■ Plaintiff cannot contend that a prisoner serving a life sentence in confinement has an inherent due process clause interest in employment outside the correctional institution. As the Supreme Court has noted, "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed on him, . . . the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Thompson*, 490 U.S. at 461, 109 S.Ct. at 1909 (quoting *Montanye v. Haymes*, 427

U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)).

Plaintiff must therefore look to the law of Michigan for the source of his legitimate entitlement. His claim is based upon the procedural guidelines established by the Department of Corrections for the removal of an individual inmate from the program. The guidelines specify the criteria relevant to a reclassification of a prisoner's status for cause, such as misconduct. This would then justify the removal of the inmate. In effect, plaintiff claims that since he committed no violation of any Department of Corrections rules or regulations, he could not be reclassified and terminated from the program without having his liberty interest violated.

■ Plaintiff's analysis, however, is not consistent with the enabling statute, the law of the state, or the federal Constitution. As an initial matter, a prisoner can have a liberty interest in a program such as the one here as a result of a state's statutory or administrative directives only when they involve "explicitly mandatory language, in connection with the establishment of 'specified substantive predicates' to limit discretion." *Thompson*, 490 U.S. at 463, 109 S.Ct. at 1910 (quoting *Hewitt v. Helms*, 459 U.S. at 472, 103 S.Ct. at 871). The enabling legislation at issue here uses no such mandatory language: "the director *may* extend the limits of confinement." Mich.Comp.Laws Ann. § 791.265a(1) (West Supp.1991) (emphasis added). In fact, such permissive language granting almost completely unfettered discretion to the director flies in the face of the existence of any substantive predicates for action. *Cf. Board of Pardons v. Allen*, 482 U.S. 369, 377–78, 107 S.Ct. 2415, 2420, 96 L.Ed.2d 303 (1987) ("mandatory language ('shall') . . . create[d] a presumption that parole release will be granted") (quoting *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979)). Here, the director "may" authorize the release, but he need not do so. In fact, the only thing the director *must* do under the statute is "promulgate rules to implement the section." Mich.Comp.Laws Ann.

§ 791.265a(2) (West Supp.1991). This falls far short of a mandatory imperative giving rise to a legitimate expectation.

Plaintiff also points to reliance on the policy directive specifying conditions for removal of individual inmates from the program as a source of his legitimate entitlement. However, PD–BFS 43.01 enumerates criteria for the removal for cause of prisoners in the program, not for determining eligibility for the program as an initial matter.

Plaintiff's contention misses the fundamental dimension of the removal of all "lifers," as a category, from the program. Plaintiff was not removed pursuant to an individual determination about him—the issue was not his classification under the program. Rather, it was a broad categorization relating to the participation in the program in the first place. Were we to accept plaintiff's argument, prison officials would be unable to alter a prison policy or program that negatively impacts an individual prisoner. As plaintiff was removed pursuant to a generalized policy determination concerning the bounds of the program, the specific criteria contained in the policy directives for reclassification of particularized rights in the program have no applicability.

The courts of Michigan have recognized this distinction between individual status under a program and categorical status relative to the jurisdiction of a program. See Luttrell v. Department of Corrections, 365 N.W.2d 74, 421 Mich. 93 (1984). In Luttrell, the Michigan Supreme Court held that the Department of Corrections was entitled to exclude broad categories of prisoners from participation in the work-pass program. The department had adopted a policy of excluding drug traffickers, and certain inmates who were thereby denied participation objected. The court held that utilizing broad categories was well within the discretion accorded the director under the statute. We see no conceptual difference between an excluded category of drug traffickers and an excluded category of inmates serving life sentences.

Further cutting against plaintiff, the Michigan Court of Appeals held on remand that the characterization of a particular individual as a drug trafficker, based upon particularized factual determinations specific to each individual, does not itself require a hearing to afford a prisoner due process. Prisoners were determined to be entitled only to a post-determination hearing to challenge such a categorization. This holding was based on the court's conclusion that participation in the work-pass program was not a protected liberty interest. "[N]either the enabling legislation nor the department's rules and policy directives guarantee or require that a prisoner meeting the eligibility criteria will be accorded placement in a community program." Luttrell v. Department of Corrections, 143 Mich.App. 527, 535, 373 N.W.2d 168 (1985).

Thus, under the law of the State of Michigan, plaintiff has little basis to claim a legitimate entitlement. The director clearly has the latitude to establish broad categories excluded from participation in the work-pass program. Plaintiff was provided a pre-termination hearing to contest his inclusion in that category. He did not do so. Under Luttrell, plaintiff has no rights under state law. He cannot possibly then have a protected liberty interest.

█ In addition, it appears that plaintiff was categorically ineligible to participate in the work-pass program by virtue of the enabling statute itself. Plaintiff was serving a sentence for second degree murder and assault with intent to commit murder. These are quite easily classified as violent and assaultive crimes. Yet, the statute authorizing the work-pass programs specifies that "[p]risoners convicted of a crime of violence or any assaultive crime shall not be eligible ... until such time as the minimum sentence imposed for the crime has less than 180 days remaining...." Mich.Comp.Laws Ann. § 791.265a(4) (West Supp.1991). Plaintiff has never claimed that he was then within 180 days of having served his minimum sentence. It would appear that he was wholly ineligible for the program. He cannot legitimately contend

that his initial placement in the program, although in error, could not be rescinded by the state without violating clearly established constitutional or statutory rights, yet that is the essence of his complaint.

■ Finally, were plaintiff able to establish a protected liberty interest, he still must then show the procedures attendant upon the action to have been constitutionally deficient. *Thompson*, 490 U.S. at 460, 109 S.Ct. at 1908 (citing *Hewitt v. Helms*, 459 U.S. at 472, 103 S.Ct. at 871–72). No procedure could satisfy plaintiff in the instant case, however, because he objects to the legitimate use of categories under the program. Not even a full scale, adversarial, trial-type hearing on the record would satisfy plaintiff, for there is nothing he can contribute that would alleviate his wrong. He was given an opportunity to contest his placement in a category—he wants to object to the consequences attached to that category, which could not be addressed in a due process hearing for each individual. If plaintiff were to claim he was given no opportunity to object and state that he was not in fact a lifer, or that he had not been convicted of a violent crime, there might then be some constitutional mandate for procedural relief. Even in that event, however, plaintiff would ultimately be removed from the program, which is the real wrong he has alleged.

In light of the foregoing, we conclude as a matter of law that plaintiff has not, and cannot, establish that the defendants violated established statutory or constitutional rights. As such, he has failed to state a claim for relief under 42 U.S.C. § 1983. We therefore AFFIRM the District Court in its grant of summary judgment.