Carol L. MILLER, Plaintiff,

v.

Donal CAMPBELL, et al., Defendants.

No. 00–2539–D/V.

United States District Court,
W.D. Tennessee,
Western Division.

June 27, 2000.

Carol L. Miller, Memphis, TN, pro se.

ORDER TO COMPLY WITH PLRA OR-
DER ASSESSING FILING FEE
ORDER OF DISMISSAL ORDER
DENYING MOTION FOR AP-
POINTMENT OF COUNSEL AND
ORDER CERTIFYING APPEAL
NOT TAKEN IN GOOD FAITH

DONALD, District Judge.

Plaintiff, Carol L. Miller, prison registration number 157591, an inmate at the Mark Luttrell Correctional Center (MLCC),[1] has filed a complaint under 42 U.S.C. § 1983. The Clerk of Court shall file the case and record the defendants as Donal Campbell, Jim Rose, Earline Guida, Maurice Payne, Dietra Gooch, Jackie Baugh, Joyce Ladd, Alice Caruthers, Wayne Douglas, William Ivory, Anthony Freeman, and Thomas Lamon.[2]

---

1. The word prison is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

2. Plaintiff also named John Doe as a defendant. It is well settled that a complaint cannot be commenced against fictitious parties. *Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir.1968); *see also Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir.1996) (explaining that a claim naming fictitious "John Doe" defendants does not commence an action and that a subsequent amendment identifying the defendant cannot relate back under Rule 15). Thus, to the extent that plaintiff seeks to bring any non-frivolous complaint against "John Doe" prison officials, she must identify the defendant and file a new lawsuit within the one (1) year statute of limitations applicable in § 1983 actions. Tenn.Code Ann. § 28–3–104(a).

## I. *ASSESSMENT OF FILING FEE*

■ Under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a). The *in forma pauperis* statute, 28 U.S.C. § 1915(a) merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has not properly completed and submitted both an *in forma pauperis* affidavit and a prison trust fund account statement showing:

1) the average monthly deposits, and

2) the average monthly balance

for the six months prior to submission of the complaint, and

3) the account balance when the complaint was submitted.

■ Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is ORDERED that within thirty (30) days of the entry of this order the plaintiff properly complete and file both an *in forma pauperis* affidavit and a trust fund account statement showing the above amounts. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, she is ORDERED to notify the Court immediately of her change of address. If still confined she shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

## II. *ANALYSIS OF PLAINTIFF'S CLAIMS*

Plaintiff sues Tennessee Department of Correction (TDOC) Commissioner Donal Campbell, Assistant Commissioner Jim Rose, Tennessee State Penitentiary for Women (TPW) Warden Earline Guida, TPW Lieutenant Maurice Payne, TPW Sergeants and Disciplinary Board Members Dietra Gooch and Jackie Baugh, TPW Disciplinary Board Members Alice Caruthers and Joyce Ladd, MLCC Warden Wayne Douglas, MLCC Disciplinary Chairperson William Ivory, MLCC Grievance Chairperson Anthony Freeman, and MLCC Administrative Segregation Board Member Thomas Lamon.

Plaintiff alleges that she was formerly housed at TPW in Nashville, Tennessee. Plaintiff alleges that while investigating disciplinary write-ups in her job as an inmate advisor at TPW, she obtained entry to the prison hospital to talk with a prison official, Mr. Crawford. During the course of the conversation Crawford discovered that his keys were missing. Plaintiff alleges that she was searched and no keys were found, however, she was advised that she was being placed on segregation pending the placement of disciplinary charges.

Plaintiff alleges that she was transferred to MLCC before the disciplinary charges were brought. Plaintiff alleges that she was placed in segregation at MLCC. Plaintiff alleges that the TPW Administrative Segregation Board came to MLCC to hold her hearing. Plaintiff alleges that she was then charged with three disciplinary infractions. Plaintiff alleges the TPW Disciplinary Board also traveled to MLCC to conduct her hearing, at which time she was found guilty of two of the three charges. Plaintiff alleges various violations of her right to due process in the manner in which the hearings and appeals were conducted and in which her grievances were handled.

Plaintiff further alleges that she was released from segregation for less than a month when she was again placed on ad-ministrative segregation. Plaintiff again alleges violations of TDOC policy and her right to due process in the manner in which the segregation hearing was conducted. Plaintiff again filed a grievance which was deemed "non-grievable." Plaintiff seeks an order from this Court which directs her release from administrative segregation and the expungement of her disciplinary convictions as well as the restoration of her sentence credits and pay from a prison job.

■ Plaintiff has no claim for the deprivation of due process during a prison disciplinary proceeding. In general, an inmate does not have a liberty interest in a particular security classification or in freedom from segregation. *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Newell v. Brown,* 981 F.2d 880, 883 (6th Cir.1992); *Beard v. Livesay,* 798 F.2d 874, 876 (6th Cir.1986).

This case is another implicating a thorny question along the continuum on which many state prisoner issues eventually intersect: the line at which claims affecting merely a prisoner's liberty *within* confinement meet claims affecting the duration of that confinement. The scope of this intersection was first clearly delineated in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), which involved attempts by various New York state prisoners to challenge prison disciplinary board decisions to deprive them of sentence credits. The Supreme Court reasoned that:

> even if restoration of respondents' good-time credits had merely shortened the length of their confinement, rather than required immediate discharge from that confinement, their suits would still have been within the core of habeas corpus in

attacking the very duration of their physical confinement itself. It is beyond doubt, then, that the respondents could have sought and obtained fully effective relief through federal habeas corpus proceedings.

411 U.S. at 487–88, 93 S.Ct. 1827. The federal courts wrestled in the succeeding twenty-four years over this distinction between claims seeking to vindicate civil rights through an award of damages and those seeking to affect the duration of confinement. As the implications of *Preiser* percolated through the appellate courts, the Supreme Court gradually shed light on additional sections of the habeas/ § 1983 boundary.

On the habeas side of this continuum, in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Court identified as part of this border territory any civil rights claim requiring proof of facts or law that would necessarily call into question a pending state criminal prosecution or state court conviction. According to *Heck*, until the state court prosecution is terminated in the defendant's favor, either by a favorable jury verdict or by a post-verdict ruling on direct or collateral review setting aside a conviction, no claim under § 1983 even accrues.

The next term, the Court broadened the boundary on the damages section of the border in *Sandin v. Conner*, 515 U.S. 472, 484–87, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In *Wolff v. McDonnell*, 418 U.S. 539, 564–71, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court had identified the procedural requirements prison officials must adopt to satisfy due process when depriving a prisoner of various liberty interests, including deprivation of sentence credits and confinement to segregation. In *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Court limited the *Wolff* requirements applicable to purely administrative, rather than punitive segregation, but broadened the scope of federal court authority over prison administration by

recognizing that the mandatory language of state regulations could create liberty interests protected by due process requirements. Courts were required to consider whether "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State [or federal government] has created a protected liberty interest." *Hewitt*, 459 U.S. at 472, 103 S.Ct. 864. *Sandin*, however, rejected *Hewitt*, and much of the lower-court jurisprudence that relied on *Wolff*. Without explicitly overruling *Hewitt* itself, *Sandin* returned to the question left open in *Wolff*, 418 U.S. at 564–71, 94 S.Ct. 2963: whether inmates even have a liberty interest in freedom from segregation, punitive or administrative. The Court rejected *Hewitt*'s methodology and concluded that they do not.

The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *See also Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., *Vitek [v. Jones*, 445 U.S. 480,] 493, 100 S.Ct. 1254, 63 L.Ed.2d 552 [ (1980) ] (transfer to mental hospital), and *Washington [v. Harper*, 494 U.S. 210,] 221–222, 110 S.Ct. 1028, 108 L.Ed.2d 178 [ (1990) ] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the ab-

sence of any state regulation. Neither *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), nor *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), requires such a rule.... We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.... We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff.* The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Sandin,* 515 U.S. at 483–84, 486, 487 (footnotes and some citations omitted).

*Sandin* thus focuses not on the content of regulations, but on the "nature of the deprivation" visited upon the inmate. *Id.* at 481, 115 S.Ct. 2293. Absent "atypical and significant hardship," a change in the conditions of confinement simply does not inflict a cognizable injury that merits constitutional protection, regardless of the motivation of the official when making the change. *Id.* at 484–86, 115 S.Ct. 2293. Thus language in state laws or prison regulations no longer creates a liberty interest protected by the Due Process Clause. *Rimmer–Bey v. Brown,* 62 F.3d 789, 790–91 (6th Cir.1995). Rather, from now on, when analyzing due process claims federal courts look neither to state laws or regulations to ascertain whether they create a liberty interest in connection with a imposition of disciplinary penalties or reclassification, nor to the subjective motives of prison officials for effecting such changes. Instead, the Court focuses on the nature of the deprivation itself.

After [*Sandin* ], prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion. Instead, a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 472, 115 S.Ct. at 2294. *Orellana v. Kyle,* 65 F.3d 29, 31 (5th Cir. 1995). According to *Orellana,* only deprivations that clearly impinge on the *duration* of confinement, will henceforth even possibly qualify for constitutional "liberty" status. *Id.* at 31–32.

Plaintiff's dissatisfaction with her security classification does not cause that status to constitute an atypical and significant hardship. There is no constitutional right to a particular security classification.

[A]n inmate's "subjective expectations [are not] dispositive of the liberty interest analysis." *Sandin,* 515 U.S. at 486 n. 9, 115 S.Ct. 2293. Rather, the *Sandin* standard invokes a comparison of the punitive restraint with what an inmate can expect from prison life generally to determine whether there has resulted an "atypical, significant deprivation," *Williams v. Ramos,* 71 F.3d 1246, 1249 (7th Cir.1995), which presents "dramatic departures from the basic conditions and ordinary incidents of prison sentences." *Moorman v. Thalacker,* 83 F.3d 970, 972 (8th Cir.1996).

*Wilson v. Harper,* 949 F.Supp. 714, 721 (N.D.Iowa 1996) (citation form updated).

As plaintiff has not alleged any atypical and significant hardship, she has failed to allege the deprivation of a federally recognized liberty interest, and is not entitled to any of the procedural protections enunciated in *Wolff* or its progeny. She has no due process claim.

■ As is also clear under *Sandin,* any violation of TPW, MLCC, or TDOC procedural regulations in disciplining plaintiff did not violate her due process rights. Even before *Sandin,* it was clear that the scope of "the procedural due process required before one may be deprived of a liberty interest is governed by federal con-

stitutional law and not state law." *Black v. Parke,* 4 F.3d 442, 447 (6th Cir.1993). Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation. *Hewitt,* 459 U.S. at 471, 103 S.Ct. 864; *Levin v. Childers,* 101 F.3d 44, 46 (6th Cir.1996) ("there is a fundamental logical flaw in viewing the process as a substantive end in itself"); *Harrill v. Blount County, TN.,* 55 F.3d 1123, 1125 (6th Cir.1995) (state law cannot create a federal constitutional right); *Spruytte v. Walters,* 753 F.2d 498, 508 (6th Cir.1985) (violation of state law does not by itself constitute deprivation of due process). Thus, even before *Sandin,* use of mandatory language in mere procedural regulations did not create any substantive liberty interest. *See McLaurin v. Morton,* 48 F.3d 944, 947 (6th Cir.1995). After *Sandin* it is even clearer that mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause. *Rimmer–Bey,* 62 F.3d at 790–91. Thus, to the extent that the complaint should be construed as asserting that the defendants did not comply with TPW, MLCC, or TDOC regulations in connection with the disciplinary conviction or revocation of sentence credits, plaintiff has not suffered any deprivation of due process because of such noncompliance.

■ To the extent that the complaint should be construed as attempting to circumvent *Sandin* by contending, analogously to the plaintiff in *Orellana,* that the revocation of sentence credits affects the "duration" of confinement, plaintiff still

has no claim. Such arguments misread *Sandin* and *Orellana. Orellana* enunciates the widest possible reach of *Sandin*'s delimitation of deprivations implicating the Due Process Clause. Not every regulation or decision that might *conceivably* or *arguably* have some effect on the time an inmate serves in confinement triggers due process scrutiny. Any claim based on the speculative effect of a particular disciplinary decision to revoke sentence credits on the ultimate end of the prisoner's sentence is arguably foreclosed by *Sandin,* 515 U.S. at 484–87, 115 S.Ct. 2293.[3]

■ Furthermore, there is no right under the Constitution to earn or receive sentence credits. *Hansard v. Barrett,* 980 F.2d 1059, 1062 (6th Cir.1992). Neither is there any fundamental right to parole or to release from a sentence of incarceration that has itself been lawfully imposed. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Tennessee law and regulations do not create a right to parole, *Wright v. Trammell,* 810 F.2d 589, 591 (6th Cir. 1987), or to earn such credits. *See* Tenn. Code Ann. § 41–21–236(a)(2) (1990).[4] Accordingly, there is no right to due process in connection with disciplinary or classification decisions that have such an uncertain effect on a particular inmate's release.

Even if such decisions do have a quantifiable effect on plaintiff's potential release so as to constitute a cognizable claim, however, she cannot pursue a claim for damages or injunctive relief under § 1983. Af-

---

3. In addition to rejecting any notion that any convicted prisoner can ever enjoy a liberty interest in freedom from mere confinement in isolation or segregation, the *Sandin* court noted that any possible effect on Conner's future release was too attenuated to constitute a deprivation of a liberty interest protected by the Due Process Clause. *Sandin,* 515 U.S. at 487, 115 S.Ct. 2293.

4. Each inmate who exhibits good institutional behavior and/or who exhibits satisfactory performance within a program may be awarded time credits toward the sentence imposed,

varying between one (1) day and sixteen (16) days for each month served, with not more than eight (8) days for each month served for good institutional behavior and not more than eight (8) days for each month served for satisfactory program performance in accordance with the criteria established by the department. No prisoner shall have the right to any such time credits nor shall any prisoner have the right to participate in any particular program and may be transferred from one (1) assignment to another without cause.

Tenn.Code Ann. § 41–21–236(a)(2).

ter *Sandin,* in *Edwards v. Balisok,* 520 U.S. 641, 647–48, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Court returned to the habeas side of the boundary and applied *Heck* to prison disciplinary cases. According to *Balisok,* when a prisoner brings a § 1983 action claiming that he was deprived of due process during a disciplinary proceeding that resulted in the revocation of sentence-credits, and the claim if proved would "necessarily imply the invalidity of the punishment imposed," no cause of action accrues until the credits are restored. Of course, under *Preiser,* a restoration of credits can only be sought in a habeas proceeding and the relief cannot be sought in federal court unless the prisoner first presents his claim to the state court and exhausts the remedy provided by the state.

As a result, prisoners who attempt to file a federal court challenge to a prison disciplinary proceeding now find that if they allege only confinement to segregation or more severe conditions they enjoy no liberty interest and thus no due process protection at all, while if they allege a deprivation of sentence credits their claim is not cognizable under § 1983 until the credits have been restored. In either case, the state prisoner claiming a due process violation in connection with prison disciplinary proceedings has no federal forum for her damages claim.

▮▮▮ Furthermore, there is no constitutional provision supporting plaintiff's implicit claim that she has a due process right to any job. "[T]he Constitution does not create a property or liberty interest in prison employment [and] any such interest must be created by state law by 'language of an unmistakably mandatory character.'" *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir.1989) (citations omitted) (quoting *Ingram v. Papalia,* 804 F.2d 595, 596–97 (10th Cir.1986)); *Watts v. Morgan,* 572 F.Supp. 1385, 1388 (N.D.Ill.1983). *See also Codd v. Brown,* 949 F.2d 879, 882 (6th Cir.1991) (inmate had no liberty or proper-

ty interest under the Constitution in participation in a work-release program).

As the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates. *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991); *James v. Quinlan,* 866 F.2d 627, 629–30 (3d Cir.1989); *Garza v. Miller,* 688 F.2d 480, 485 (7th Cir.1982). *See also Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987) (no constitutional right to prison job); *Adams v. James,* 784 F.2d 1077, 1079 (11th Cir.1986) (same); *Lyon v. Farrier,* 727 F.2d 766, 769 (8th Cir.1984) (same); *Manning v. Lockhart,* 623 F.2d 536, 538 (8th Cir.1980); *Sigler v. Lowrie,* 404 F.2d 659 (8th Cir.1968); *Woodall v. Partilla,* 581 F.Supp. 1066 (N.D.Ill.1984); *Anderson v. Hascall,* 566 F.Supp. 1492, 1496 (D.Minn.1983). *Accord, Baumann v. Arizona Dep't of Corrections,* 754 F.2d 841, 846 (9th Cir.1985) (no constitutional right to jobs and educational opportunities); *Rizzo v. Dawson,* 778 F.2d 527, 530 (9th Cir.1985) (no liberty or property interest in vocational training); *Hoptowit v. Ray,* 682 F.2d 1237, 1256 (9th Cir.1982), 682 F.2d at 1254–55 (no constitutional right to rehabilitation).

▮▮ Rather, prison administrators may assign inmates jobs and wages at their discretion. *Altizer v. Paderick,* 569 F.2d 812 (4th Cir.1978); *Hascall,* 566 F.Supp. at 1494; *Chapman v. Plageman,* 417 F.Supp. 906, 908 (W.D.Va.1976). Plaintiff thus has no property or liberty interest in either a paying job in prison or in receiving payment at any particular rate or any schedule. As plaintiff has no property right in wages from a prison job, she has no claim because she cannot earn an income while confined on protective custody or in segregation.

Accordingly, this complaint lacks an arguable basis either in law or in fact and is, therefore, frivolous. *See Denton v. Hernandez,* 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Neitzke v.*

*Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

As the complaint is frivolous, it is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). As plaintiff's complaint is dismissed as frivolous, her motion for appointment of counsel is DENIED as moot.

### III. *APPEAL ISSUES*

■ The next issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis.* Twenty-eight 28 U.S.C. § 1915(a)(3) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith.

■ The good faith standard is an objective one. *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* Accordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal *in forma pauperis. See Williams v. Kullman,* 722 F.2d 1048, 1050 n. 1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case as frivolous also compel the conclusion that an appeal would be frivolous.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith, and plaintiff may not proceed on appeal *in forma pauperis.*

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case. The United States Court of Appeals for the Sixth Circuit has held that a certification that an appeal is not taken in good faith does not

affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *McGore v. Wrigglesworth,* 114 F.3d 601, 610–11 (6th Cir.1997). *McGore* sets out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that if she wishes to take advantage of the installment procedures for paying the appellate filing fee,[5] she must comply with the procedures set out in *McGore* and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal in this district of one of her cases as frivolous.

---

5. The fee for docketing an appeal is $100. *See* Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or

upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.